77CVPURC.txt

1

77CVPURC                    Conference
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    PURDUE PHARMA, L.P. AND PF
3    LABORATORIES INC.,
4
4                    Plaintiffs,
5                                      07 CV 03972 (SHS)
5              v.                      07 CV 03973 (SHS)
6                                      07 CV 04810 (SHS)
6    KV PHARMACEUTICAL CO. AND
7    ACTAVIS TOTOWA L.L.C.,
7
8                    Defendants.
8
9    ------------------------------x
9
10   PURDUE PHARMA L.P., ET AL,
10
11                    Plaintiffs,
11
12             v.                      06 CV 13095 (SHS)
12
13   MALLINCKRODT INC.,
13
14                    Defendant.
14
15   ------------------------------x
15
16                                      New York, N.Y.
16                                      July 12, 2007
17                                      3:25 p.m.
17
18   Before:
18
19                    HON. SIDNEY H. STEIN,
19
20                                      District Judge
20
21                    APPEARANCES
21
22   ROPES & GRAY
22        Attorneys for Plaintiffs on 07 CV 3972
23   BY:  ROBERT J. GOLDMAN
23        PABLO D. HENDLER
24        RICHARD A. INZ
24
25
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5                                                          2

77CVPURC                    Conference
1                    APPEARANCES (cont'd.)
2    JONES DAY
2        Attorneys for Plaintiffs on 06 CV 13095
3    BY:  JOHN J. NORMILE
3
4    MORGAN & FINNEGAN
4        Attorneys for Defendants KV Pharmaceutical Co.
                    Page 1

77CVPURC.txt

```
 5   BY:  JOHN F. SWEENEY
 5        SETH J. ATLAS
 6        -AND-
 6   SKADDEN ARPS SLATE MEAGHER & FLOM
 7   BY:  STEVEN C. SUNSHINE
 7
 8   AXINN VELTROP & HARKRIDER
 8        Attorneys for Defendants Actavis Totowa L.L.C.
 9   BY:  CHAD A. LANDMON
 9        MARK D. ALEXANDER
10
10   LORD BISSELL & BROOK
11        Attorneys for Defendant Mallinckrodt Inc.
11   BY:  HUGH L. MOORE
12
12
13
13
14
15
16
17
18
19
20
21
22
23
24
25
```

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

```
     77CVPURC                          Conference
 1              (In open court)
 2              (Case called)
 3              THE DEPUTY CLERK:  Purdue against KV, 07 CV 3972; and
 4   Purdue against Mallinckrodt, 06 CV 13095.
 5              Counsel, please state your names for the record.
 6              MR. GOLDMAN:  Good afternoon, your Honor.  Robert
 7   Goldman, Ropes & Gray, for Purdue in the KV and Actavis cases.
 8   And with me are my colleagues Pablo Hendler and Richard Inz.
 9              THE COURT:  Good afternoon.
10              MR. NORMILE:  Good afternoon, your Honor.  John
11   Normile, Jones Day Law Firm, on behalf of Purdue Pharma and the
12   other Purdue plaintiffs in Purdue v. Mallinckrodt, 06 CV 13095.
13              THE COURT:  Good afternoon.  Please be seated.
14              MR. LANDMON:  Good afternoon, your Honor.  I'm Chad
15   Landmon with Axinn, Veltrop & Harkrider on behalf of Actavis.
16   With me today is Mark Alexander.
17              THE COURT:  Good afternoon.
18              MR. SWEENEY:  Good afternoon, your Honor.  John
19   Sweeney of Morgan & Finnegan for KV.  And with me today is my
20   partner Seth Atlas.
21              MR. SUNSHINE:  Good afternoon, your Honor.  Steve
22   Sunshine from Skadden Arps representing KV with respect to
23   antitrust issues.
24              MR. MOORE:  Hugh Moore from Lord, Bissell & Brook
25   representing Mallinckrodt.
```

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

     77CVPURC                          Conference
                                       Page 2

77CVPURC.txt
```
 1          THE COURT:  06 CV 13095.
 2          MR. MOORE:  That's correct, your Honor.
 3          THE COURT:  Good afternoon to all of you.  We're
 4   actually here, just so the record is clear, on the three KV
 5   cases:  07 CV 3972, 07 CV 3973, and 07 CV 4810; as well as we
 6   recently folded in the Mallinckrodt case of 06 CV 13095 based
 7   on the correspondence and my direction to have Mallinckrodt
 8   here today.
 9          The information that I think is relevant for this
10   conference is, of course, the order of the Federal Circuit
11   dated February 1, 2006, and the Rule 26(f) submission of the
12   parties of KV, the three KV cases, dated June 13; plus the
13   follow-up letters of Morgan & Finnegan on the 14th, Ropes &
14   Gray on the 18th, and Axinn Veltrop of June 22, all telling me
15   what that Rule 26(f) report said.
16          And then we simply have the two pieces of
17   correspondence in regard to folding in Mallinckrodt, and that's
18   the letter of Jones Day dated July 6, and the letter of Lord
19   Bissell dated July 9.  That's the basis of what we're going to
20   discuss today.
21          Let me give you an overview of where I stand and what
22   I think we have to do.  I won't put too fine a point on it
23   because I want to hear the positions of the parties, as well.
24          It seems to me that the issue in this case for the
25   past several years, it is the remand of inequitable conduct, in
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5                                                               5

77CVPURC                     Conference
```
 1   my determination, as to whether or not there was inequitable
 2   conduct such that the patent here was invalidated.  That's
 3   really what the Federal Circuit remanded for me to do back in
 4   February.  We had a way of proceeding.  I was going to decide
 5   that issue on remand based on the Endo record.  The parties'
 6   relevant litigations had agreed on that.  But events have
 7   passed that by.  We're in a different situation now, given the
 8   public settlement of some of these cases and new litigation
 9   specifically, obviously, the two KV cases that were started in
10   Delaware, 3972 and 4973, and the one that was started here,
11   4810.  And the fact of the Mallinckrodt suit.
12          But what underlies all of those is there needs to be a
13   determination on whether inequitable conduct has invalidated
14   the patent.  The antitrust issues I said in the MDL and stated
15   in the MDL, I think don't have to necessarily follow a
16   determination of inequitable conduct.
17          Now, there's some discussion in these papers about
18   there being an overlap in discovery, and I'm not quite sure
19   that that's so.  But whether or not there is, I think
20   conceptually the antitrust counterclaim should just be put off
21   to another day until after the invalidity is decided.  When I
22   say "invalidity," I mean invalidity and unenforceability.  So
23   if we're talking big picture, I think that's really element 1
24   in my thinking.  The antitrust counterclaim is for another day.
25          I guess big picture item No. 2, part of that, is I'm
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5                                                               6

77CVPURC                     Conference
```
 1   under statutory obligation here to move these HatchWaxman
 2   cases.  And the parties are under a statutory obligation to
 3   coordinate in attempting to expedite the matter.  Now, that's
 4   hard to believe, given the long history here and the amount of
 5   effort that's been put in in part by me, but more importantly,
```
Page 3

77CVPURC.txt

 6  by the scores of lawyers who have been involved in these cases
 7  going back to Endo.  It's been a long time since they've
 8  started.  And I think it's simply time to bring them to a head.
 9  And the way to do that, I think, is to effectuate the mandate
10  of the Federal Circuit.
11          Now, conceptually, the easiest way for me to handle
12  that is on the Endo record.  There's some defendants here, I
13  think that would be unfair.  And to the extent they are raising
14  issues of invalidity and unenforceability that were not part of
15  the Endo record, I guess I want to hear about that.  Because to
16  the extent that that's true, their points have some
17  credibility; that is, why should I go forward on the Endo
18  record if they don't have opportunity to develop their
19  counterclaims on invalidity and inequitable conduct to the
20  extent they're non-Endo issues.  But I don't have a good sense
21  of that from the papers.  If there are such issues, well, I
22  think those parties should be able to develop it, all within
23  the bigger context of gentlemen, let's get this done.
24          The timetables set forth in the proposal I think range
25  from being too long to being very too long.  But I don't think
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

77CVPURC          Conference
 1  that that's inconsistent with the desires of the parties.  And
 2  assuming everyone agrees with me, or at least is prepared to
 3  live with my relatively strong feeling that the antitrust
 4  counterclaims are just not going to be handled now, it doesn't
 5  make sense in terms of judicial efficiency.
 6          Now, you'll realize I haven't said a word about
 7  infringement.  I'm not really sure where infringement plays in
 8  terms of a violation of Actavis has conceded infringement.  I
 9  don't know if KV has weighed in on infringement or not yet.
10          MR. SWEENEY:  No, your Honor, we have not conceded
11  infringement.  And we anticipate making a noninfringement
12  argument.
13          THE COURT:  All right.  But in an odd way,
14  infringement also, perhaps like the antitrust counterclaims,
15  seems to me to be an issue for another day, at least insofar as
16  infringement was found and upheld; that is, found by me and
17  upheld by the Federal Circuit in Endo.  And we have a session
18  of infringement by Actavis.
19          I don't think conceptually the issue of infringement
20  is going to try these litigations; obviously, it's an important
21  issue.  But the most important one, I think, is invalidity and
22  unenforceability.  If invalidity is found, then infringement
23  drops out.
24          MR. SWEENEY:  Yes, your Honor, just to follow up what
25  I said.  We're fine with going forward with the inequitable
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

77CVPURC          Conference
 1  conduct issue first.  KV would not be seeking discovery beyond
 2  the Endo record.  However, I just want to make it clear that we
 3  will and do have a noninfringement position if we get to that
 4  day.
 5          THE COURT:  Okay.  Nobody's waiving anything.  We're
 6  trying to figure out where we're going.  I understand that,
 7  Mr. Sweeney.  That's another point that I thought of I should
 8  make.  It sounds like Mr. Sweeney at least is not disagreeing
 9  with me, that it is in an odd way infringement itself takes a
10  back seat here to invalidity and unenforceability.
                            Page 4

77CVPURC.txt

11          To the extent I have agreement on all that, what we're
12  doing is really narrowing and focusing this case between
13  invalidity and unenforceability, putting everything off because
14  it may not need to be addressed depending upon what happens in
15  the invalidity and unenforceability determination.
16          I need a better sense of what discovery, if any, is
17  necessary on that issue, given the Endo record.  There clearly
18  will be a dump, if you will, of the prior litigation documents
19  by Purdue; I think that's foreseen in all of your statements
20  here, which gets everybody a good way there.
21          That's how I see it.  And I see it all happening this
22  year.  Who would like to tell me whatever they'd like to tell
23  me?
24          MR. GOLDMAN:  Your Honor, if we were starting on a
25  clean slate, Purdue's position would be as it was back in
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

5                                                               9

77CVPURC                    Conference
1  December:  It impacts that we ought to prepare discover and try
2  all the issues together, because that would be, from Purdue's
3  point of view, the most expeditious way to do it.  But we
4  understand the logic of what your Honor wants to do.  And I
5  think we're past the point now of trying to proceed in that
6  fashion.
7          What has been the experience on the remand briefing to
8  date is that there are the remand issues, and then there are
9  additional issues; that is, the issue that was addressed in the
10  Federal Circuit opinion and in your opinion in Endo were issues
11  relating to the question of the statements about the 10-40
12  milligram dosage range and so on and so forth.
13          THE COURT:  And the existence of test results.
14          MR. GOLDMAN:  That's right.
15          THE COURT:  Okay.
16          MR. GOLDMAN:  And the remand dealt with a
17  particular -- essentially affirmed your Honor on the question
18  of materiality, characterized the materiality as low, and said
19  that the facts upon which your Honor based your inference of
20  intent were not sufficient to support the inference based on
21  the Federal Circuit's characterization of materiality.
22          THE COURT:  I think that's a fair characterization.
23          MR. GOLDMAN:  On remand in Endo and on the remand
24  briefing in Impax and Boehringer, both all of the defendants
25  have attacked the problem by bringing in issues that Purdue
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

5                                                              10

77CVPURC                    Conference
1  believes were not tried in the Endo case.  Maybe you can find
2  support for pieces of them in the Endo record, but essentially
3  they weren't tried; they were new issues.
4          And so if there were a way to focus the so-called
5  remand briefing on the issues simply raised by the remand,
6  Purdue would have no problem with that.
7          THE COURT:  Purdue would have no problem with --
8          MR. GOLDMAN:  with proceeding with briefing the
9  so-called Endo remand.
10          THE COURT:  Right.  But the fly in that particular
11  ointment is new cases KV and Mallinckrodt.  And perhaps there
12  are counterclaims here regarding inequitable conduct that were
13  not raised in Endo; although it's a little hard for me to
14  determine that from the bare pleadings that I have.
15          MR. GOLDMAN:  Understood.  And so the question that we
                         Page 5

77CVPURC.txt
16  then have to address is how do we sort out that which is new
17  from that which is essentially the remand issue.  And perhaps
18  the Court has thought about it.  We're sort of wrestling with
19  the issue trying to come up with a proposal.
20           One way to do it would be to simply brief the
21  inequitable conduct issue, whatever anybody wants to say about
22  it; and at the same time, Purdue would brief the question of
23  what we believe is new that is in response to the briefs that
24  we received from the defendants.  And then at the conclusion of
25  the briefing, we would come to see your Honor for a status
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                          11
77CVPURC                    Conference
1   conference, at which the Court could determine how it wanted to
2   proceed on the so-called new issues; that is, it may be that we
3   have to have a hearing of half -- it may be simply that the
4   record gets supplemented, as Purdue moved to do in each of the
5   Endo and Impax situations, and Boehringer agreed to do in the
6   last round.
7            It may be that we need to have an evidentiary hearing
8   on those new issues that will take half a day or a day.  But it
9   seems to me that if the Court wants to brief the inequitable
10  conduct issue first, and we can't figure out a way to limit it
11  just to what's on the remand, then we have to lay it all out,
12  try to determine in that process what's new, and then come see
13  your Honor and ask whether the Court wants to just hear
14  argument, will accept an offer of proof, or wants to have an
15  evidentiary hearing on the rest of the issues.
16           That's Purdue's proposal as best we can crystallize it
17  at this point.
18           THE COURT:  Unless I miss my mark, and I don't want to
19  encourage the unnecessary discovery proceedings, I would assume
20  KV, Actavis, and Mallinckrodt are going to say we want
21  discovery on what we claim is leading to the invalidity and the
22  unenforceability; that is, separate and apart from the Endo
23  issues, because I'm not going to allow re-discovery on that.
24  Don't you think that's what's in these papers?  It's not even
25  lurking in the paper, it's right there.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                          12
77CVPURC                    Conference
1            MR. GOLDMAN:  It's right there.  If the Court is
2   inclined to allow discovery to reopen, it seems to us that
3   discovery ought to reopen on all of the invalidity issues, as
4   well as in addition to inequitable conduct.
5            THE COURT:  You mean on everything that was discovered
6   and briefed in Endo?
7            MR. GOLDMAN:  I don't know how much discovery the
8   defendants will need on any of the issues that were discovered
9   in Endo.  They'll tell you.  But Purdue is entitled to
10  discovery from each of the defendants as to how their products
11  came to be developed and how they came to be, particularly in
12  light of the recent decision from the Supreme Court, which sort
13  of broadens the scope of the evidence that's relevant on the
14  inquiry into obviousness.  And so that would be the discovery
15  that Purdue would wish.  Purdue would like to take discovery of
16  the defendants with respect to how their products came to be.
17           THE COURT:  How is that relevant to their
18  counterclaims of invalidity and unenforceability?
19           MR. GOLDMAN:  It's relevant to the counterclaims of
20  invalidity, not unenforceability.  It's relevant to the
                        Page 6

77CVPURC.txt
```
21  counterclaims of invalidity insofar as it bears on how people
22  of ordinary skill in the art dealt with the art and thought
23  about the art and looked at the art internally in terms of
24  resolving the issue of obviousness with respect to which is one
25  of the invalidity issues.
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

77CVPURC                        Conference
```
1        I agree, on the issue of inequitable conduct, it's
2   not.  What's relevant is what happened at Purdue and what
3   happened between Purdue and the patent office.  But invalidity
4   goes broader than that.
5        THE COURT:  The issue for me is whether or not that
6   discovery can be contained sufficient to allow this to go
7   forward and be done in the next couple of months.
8        MR. GOLDMAN:  I believe that there's no reason we
9   can't at least brief the remand issues now or get on some
10  schedule to brief the remand issues.
11       THE COURT:  Those are essentially done -- or that's
12  essentially done, right?
13       MR. GOLDMAN:  I'm not sure I understand what you mean
14  by "essentially done," your Honor.
15       THE COURT:  I had briefing in that and some other
16  cases already that were sitting around when events moved beyond
17  that.
18       MR. GOLDMAN:  I believe that's right.  Although I
19  think you'd have to ask counsel for the defendants, to the
20  extent in which they are ready to embrace the briefs filed by
21  other counsel.
22       But we can do the briefing on the remand issue
23  promptly.  At the same time, discovery can go forward on all
24  the other issues with the anticipation that we're going to have
25  to go discover and try those issues someday.
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

77CVPURC                        Conference
```
1        THE COURT:  Again, I go back.  I don't really know
2   what they're claiming in terms of invalidity and
3   unenforceability.  That's different from Endo.  But if they are
4   claiming things that are different, aren't they entitled to
5   some discovery on that before there's a determination of those
6   issues by me?
7        MR. GOLDMAN:  If they're entitled to discovery on the
8   invalidity issues, your Honor, then I believe Purdue is
9   entitled to discovery on them also.  That's really the problem
10  with trying to -- not to contain it, but simply to -- the
11  question your Honor is asking is how quickly can we get this
12  done so we can get to the briefing on the issue that remains.
13  And I guess what I'm trying to suggest is that on the remand
14  issue itself, we can do that promptly.
15       And to the extent that one gets into the new issues of
16  inequitable conduct, the new arguments of inequitable conduct,
17  I don't see a way for that -- that's going to take longer, one
18  way or the other; either because Purdue will want to supplement
19  the record because the defendants will want to take some
20  discovery.  It's just going to take a little bit of time.  How
21  much time, I can't say, because I also don't quite understand
22  what defendants have that's new.
23       THE COURT:  There may not be anything.  I'm going to
24  ask them and we'll see.
25       MR. GOLDMAN:  Yes.
```
Page 7

77CVPURC.txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5                                                                          15
      77CVPURC              Conference
 1          THE COURT:  But what's the point of deciding the
 2    remand issue that is based on the Endo record if I'm going to
 3    have to recalculate that analysis for subsequent information,
 4    assuming there are new things?  There's no point in doing that.
 5          MR. GOLDMAN:  I agree with you, your Honor.  But you
 6    began with the proposition that you start with the remand order
 7    and how do I resolve that.
 8          THE COURT:  Okay.
 9          MR. GOLDMAN:  And I was trying to respond to that.
10          THE COURT:  Okay.  I understand.  Thank you.  All
11    right.  Let me hear from the defendants.  Mr. Sweeney.
12          MR. SWEENEY:  Your Honor, yes.  Our position is we
13    would like to go ahead with the remanded inequitable conduct
14    brief, because we think that it is potentially quite
15    dispositive.  This Court has found inequitable conduct before;
16    the Federal Circuit has affirmed the withholding of material
17    information; and there is evidence of inequitable conduct,
18    intent to deceive, beyond what the Federal Circuit considered
19    that can be submitted here on remand.  And we're not seeking
20    any further discovery at this stage.  So we're a little
21    different from the other two defendants in that respect, I
22    believe.
23          THE COURT:  Just a moment.
24          (Pause)
25          THE COURT:  Yes, sir.
               SOUTHERN DISTRICT REPORTERS, P.C.
               (212) 805-0300

5                                                                          16
      77CVPURC              Conference
 1          MR. SWEENEY:  Now, I think it is correct to separate
 2    inequitable conduct, which relates to enforceability, and
 3    validity or invalidity.  What was remanded, I think Mr. Goldman
 4    is correct is the issue of inequitable conduct, and that's what
 5    we would intend to brief.
 6          Now, the Endo record does have evidence in it of
 7    invalidity, as well.  For instance, the examiner found the
 8    claims obvious, and he didn't change that until he thought he
 9    got data.  And so even if there's not an intent to deceive in
10    withholding data, it would be our argument that you would
11    revert to this determination that the examiner made, which is
12    obvious, since that has nothing to do with the remanded issue
13    per se; that's invalidity.
14          And I think that, like infringement or
15    noninfringement, the way to a later day, I think the urgency
16    here with the inequitable conduct is there has been a mandate
17    from the Federal Circuit and a remand on this specific issue;
18    briefs have been submitted in prior litigations; and we would
19    like to submit our brief on that issue, as well.  And then
20    hopefully that will be dispositive.  If it's not though, then
21    there can be two-way discovery on the other validity issues,
22    the discovery that Mr. Goldman wants and the discovery that the
23    other defendants want, and we can get to the questions of
24    obviousness and other validity issues, along with infringement
25    issues.
               SOUTHERN DISTRICT REPORTERS, P.C.
               (212) 805-0300

5                                                                          17
      77CVPURC              Conference
 1          THE COURT:  And I take it, Mr. Goldman, that's
               Page 8

77CVPURC.txt
```
 2  consistent with your interests, as well, the way Mr. Sweeney
 3  has phrased it.
 4          MR. GOLDMAN:  It would certainly be a workable way to
 5  approach the issue, yes.
 6          THE COURT:  All right.  Let me turn then to KV and
 7  Mallinckrodt.  I guess the issue is -- let's start with KV.
 8  I'm sorry, we just handled KV.  Mallinckrodt and Actavis.  Let
 9  me start then with Axinn Veltrop and Actavis.  Is there
10  anything that you feel you need in terms of discovery on
11  inequitable conduct?
12          MR. LANDMON:  Your Honor, on the inequitable conduct,
13  I'm not sure there is.  We actually have no problem with there
14  being briefing on just the remanded issue based on just the
15  Endo record.  That being said, we do think there's other
16  invalidity issues that we think are equally as important and
17  equally as dispositive in this case.
18          THE COURT:  Hold on just a second.
19          MR. LANDMON:  Sure.
20          (Pause)
21          THE COURT:  Yes, sir.
22          MR. LANDMON:  As I was saying, there are issues that
23  we believe are equally as dispositive as to the validity of the
24  patents.  Mr. Sweeney and others have mentioned obviousness;
25  that's certainly one ground.  Another ground with respect to at
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5                                                                    18
77CVPURC                    Conference
```
 1  least the '042 patent, which is, by the way, the only patent at
 2  issue with respect to Actavis, is whether the patent is invalid
 3  for double-patenting.
 4          And your Honor, our position is that we don't want
 5  discovery to be stopped while the remanded issues are being
 6  dealt with, and then come back where we are three, six months
 7  down the road, and then have to start again at square one.
 8          I don't know at this point whether we actually need
 9  any further discovery on the other invalidity issues.  What we
10  do need, we need obviously the documents and deposition
11  transcripts from the Purdue case.  I mean if that was produced
12  to us sometime within the next few weeks, I think we would then
13  have a very good idea whether we need very targeted, limited
14  depositions, if any.  And I do think we'd be in a position
15  really within the next few months to submit dispositive motions
16  on both the obviousness and double-patenting issues.
17          As to Purdue's concerns about they need discovery from
18  us, while I agree they may be entitled to some discovery from
19  us, the issue of obviousness and whether the patents were
20  obvious, are largely documents and issues that are in Purdue's
21  control documents, they are fully aware of.  And while they may
22  need to depose one or two of our guys or be entitled to that, I
23  believe it's certainly something that can be accomplished in a
24  very short period of time.
25          And just kind of lastly, which I know is an issue
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5                                                                    19
77CVPURC                    Conference
```
 1  addressed in our letter, with the HatchWaxman overlay that
 2  commands the parties to expedite the case, we bid to stay all
 3  discovery and then we need to start this over again three to
 4  six months down the road; that it's both a prejudice to us and
 5  nonconsistent with the HatchWaxman mandate.
 6          THE COURT:  All right.  Thank you.
```
Page 9

77CVPURC.txt

```
 7              MR. LANDMON:  Thank you.
 8              THE COURT:  Mr. Moore.
 9              MR. MOORE:  Yes, your Honor.  Just to give you our
10     position on what's been said so far, we have carefully reviewed
11     the trial transcript in the Endo case, post-trial briefs, the
12     field briefs, and the briefs that were filed by Boehringer and
13     Impax in the MDL ending last March.  And Mallinckrodt flatly
14     disagrees with Purdue that the additional issues raised by
15     Boehringer and Impax in March were not part of the Endo record.
16              And if I recall your Honor's opinion correctly, at one
17     point there was a footnote in your opinion to the effect that
18     the Court finds it unnecessary to rule on the additional
19     allegations of misconduct put forward by Endo.
20              So it is entirely incorrect in Mallinckrodt's view to
21     say that the sole issue that was tried in Mallinckrodt was --
22              THE COURT:  In Israel.
23              MR. MOORE:  Pardon me.  Trying to keep my parties
24     straight at the start of the case.  Entirely incorrect to say
25     that Endo did not assert -- just simply asserted a single issue
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

5                                                                      20

77CVPURC                       Conference

```
 1     and not a panoply of issues.
 2              THE COURT:  I don't think that's a conceptual issue
 3     that presents difficulty for our structure.  Here you're saying
 4     that their position that there are things being briefed on
 5     remand that weren't raised in Endo is wrong.  It may be right,
 6     it may be wrong, but I don't think that changes our analysis,
 7     does it?
 8              MR. MOORE:  No, it doesn't.
 9              THE COURT:  Okay.
10              MR. MOORE:  It does, however, frame our perspective on
11     the case.  And from what we have been able to find from public
12     sources, we find new acts of inequitable conduct by Purdue that
13     were not asserted by Endo and not the subject of litigation.
14     And Mallinckrodt flatly wants discovery on those additional new
15     acts.
16              THE COURT:  Right.  But what are those?
17              MR. MOORE:  All right, sir.  They are two.  You may
18     recall that the principal argument for patentability that
19     Purdue made was that it had surprisingly been found that
20     controlled-release oxycodone acceptably controls pain in the
21     fourth oral dosage range in 90 percent of patients.  That was
22     the benefit of this invention.
23              Purdue set that benefit against the prior art in the
24     following fashion:  Purdue said in each of its patent
25     applications, and over and over again, that surveys suggest
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

5                                                                      21

77CVPURC                       Conference

```
 1     that other opiate analgesics, in the plural, required eightfold
 2     dosage range to control pain in 90 percent of patients.
 3     Testimony in Endo from the inventor Kaiko was that his insight
 4     was based upon his experience with morphine, and his review of
 5     records at Purdue concerning MS Contin.  There has not been one
 6     word of testimony about any survey of any other opiate
 7     analgesic.  And Mallinckrodt wants discovery on that precise
 8     question.
 9              Second.  Mallinckrodt has reason to believe that with
10     respect to the purported survey of MS Contin, Purdue withheld
11     from the patent office prior art references that contradicted
```

Page 10

Case 1:07-cv-03972-SHS    Document 26-52    Filed 09/21/2007    Page 11 of 18

77CVPURC.txt
```
12   the results of that purported survey.  And this is in our
13   affirmative defense.  And our answer in the affirmative defense
14   we filed about three weeks ago.
15            THE COURT:  And you have the prior art references
16   listed there?
17            MR. MOORE:  No, your Honor, we do not.
18            THE COURT:  Okay.  Do you want to say what they are?
19            MR. MOORE:  I do not have them in front of my brain
20   this afternoon, sir, but can provide them.
21            THE COURT:  All right.  Let them know.
22            MR. MOORE:  Now, on discovery.  Well, first of all, we
23   agree with Mr. Sweeney that what the Court has right at the top
24   of its list is an unenforceability.  And that will be different
25   from invalidity.
```
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                              22
```
     77CVPURC                    Conference
1             THE COURT:  All right.  I think you've convinced me of
2    that, Mr. Sweeney has convinced me of that, Mr. Goldman has
3    convinced me of that.  I think I see that as a separation now,
4    which I didn't before, of invalidity from unenforceability; and
5    unenforceability resolving itself into an inequitable conduct
6    issue.  So what I'm seeing now is focusing on that inequitable
7    conduct and not getting into discovery issues on obviousness
8    and invalidity.
9             MR. MOORE:  Here is Mallinckrodt's thinking on the
10   subject.  That Purdue immediately produce to the defendants the
11   depositions and deposition exhibits for the inventors, for the
12   attorneys, in-house and outside, involved in drafting the
13   prosecution of the application, and anyone else involved in the
14   drafting the prosecution of the application.  There is no good
15   reason why, given the routine electronic storage of deposition
16   transcripts these days, that couldn't be done in a week.
17            Then we would have a limited period to conduct
18   additional discovery devoted to the new matter that we have
19   identified with respect to inequitable conduct.  We would get
20   to the end of that limited period, and Mallinckrodt would
21   propose 90 days after production of the documents that I've
22   described.
23            Then Mallinckrodt would try to decide for itself
24   whether it can present new information on the basis of the
25   written record, or if credibility is an issue, whether there
```
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                              23
```
     77CVPURC                    Conference
1    ought to be a very short hearing.  And then we would proceed
2    with briefing.
3             With respect to the other issues of invalidity,
4    Mallinckrodt's thought has been that it's a bit academic;
5    because the likelihood is 95 percent of discovery that the
6    defendants can reasonably expect to get from Purdue has already
7    been done by competent counsel in two prior cases.  If we have
8    a dump, as the judge puts it, that is going to go a very long
9    way for practical purposes to ending the necessity for
10   discovery on the defendant's side.  But that can go on a
11   separate track.
12            THE COURT:  Well, I think where we're left is a more
13   narrow focus than you had originally contemplated, but it may
14   be the most logical way to go.  That is, to have limited
15   discovery only on new inequitable conduct arguments, which I
16   take it are only being raised by Mallinckrodt, is that right,
```
                              Page 11

77CVPURC.txt

17   KV and Actavis?
18         MR. SWEENEY:  Your Honor, I think that's right, but
19   I'm not quite sure exactly what Mr. Goldman means when he says
20   "new."
21         THE COURT:  Well, "new" is anything that's not in the
22   Endo record.
23         MR. SWEENEY:  Okay.  That's fine.  We're comfortable
24   with that.
25         THE COURT:  Mr. Goldman, did you want to say
                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

5                                                              24
                77CVPURC            Conference
1    something?
2          MR. GOLDMAN:  Well, only that based on the past
3    briefing, newness seems to be in the eyes of the beholder.
4          THE COURT:  I understand.  But it's Purdue actually
5    who wanted to supplement the Endo record, if I remember
6    correctly.
7          MR. GOLDMAN:  That is correct.  Because we believed
8    that we were facing arguments that had not been made before,
9    arguments that we had not had an opportunity to respond to at
10   the Endo trial.  And so long as we have the opportunity to at
11   least ask for that relief again --
12         THE COURT:  Well, if you think you've been aggrieved
13   by their making arguments that were not part of the Endo trial,
14   then you can make that request.
15         MR. GOLDMAN:  All right.  Fine.  I don't want to be
16   cut off from challenging that by an undertaking today that
17   we're going forward with one thing and not another.
18         THE COURT:  All right.  No problem there.
19         MR. GOLDMAN:  Thank you, your Honor.
20         THE COURT:  Actavis, I think you've already indicated
21   that there's no separate inequitable conduct issues that you're
22   raising.
23         MR. LANDMON:  That is correct.  We don't intend to do
24   that.  I did have one question, from at least where I assume I
25   think you're heading.
                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

5                                                              25
                77CVPURC            Conference
1          Once we get all this, as it's described, a document
2    dump, I mean I think from our perspective we will largely be in
3    a position that we will at least think that there are
4    invalidity issues where we believe there will be no factual
5    disputes, no material facts at issue, and we would at least
6    like the ability to not have to wait until after this first
7    proceeding is over to submit a summary judgment motion based on
8    those issues that obviously Purdue could then respond to you by
9    pointing out where they believe there may be factual issues.
10   That to us would show that going forward then, to the extent
11   they say there are factual issues, there has been this limited
12   discovery that needs to take place.
13         THE COURT:  Do that again.  I thought where you were
14   going with that was you want to move for summary judgment on
15   invalidity, while the discovery on inequitable conduct goes
16   forward.  But then I'm not sure that's where you ended up.
17         MR. LANDMON:  I'm sorry.  Yes.  I mean that's what
18   we'd like to be able to do if, once we get the depositions and
19   everything from the previous cases, shows us that there are no
20   material facts at issue with respect to the invalidity
21   arguments we have made.  And I guess I was pointing out that I
                            Page 12

77CVPURC.txt

```
22   think that is an efficient procedure; because to the extent
23   that through the 56(f) procedure Purdue believes there are
24   actually material facts at issue, we can then focus whatever
25   continued discovery there is later on those narrow issues.  And
```
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

77CVPURC                    Conference
```
 1   to the extent that there aren't any factual issues --
 2           THE COURT:  No, I understand.  Mr. Goldman?
 3   Mr. Sweeney?
 4           MR. GOLDMAN:  Your Honor, I believe if we're going to
 5   get into the issues of invalidity, and in particular the issue
 6   of obviousness or obviousness-type double-patenting, which is
 7   where counsel indicated they were going, we're going to be in a
 8   situation where Purdue is going to want to take more discovery
 9   from the defendants than counsel for the defendants is now
10   contemplating.  Not for purposes of delay, but because we think
11   that it's relevant to evidence and relevant to the question of
12   the obviousness analysis, particularly as informed by the
13   recent law.
14           And so if we're heading down that road, I think we're
15   heading into the place where your Honor didn't want to be; that
16   is, we're going to begin to multiply these issues rather than
17   simplify them.
18           So we'll obviously do whatever the Court wants to do.
19   We're prepared to start discovery on all issues.  But if we're
20   going to just start to slice and dice it --
21           THE COURT:  I understand your position.  Yes, sir.
22           MR. SWEENEY:  We would prefer to deal with inequitable
23   conduct, the remanded issues, on the Endo record, and leave the
24   two-way discovery of invalidity --
25           THE COURT:  I think that's probably the best way to go
```
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

77CVPURC                    Conference
```
 1   at this point, because it enables me to focus on what the
 2   Federal Circuit wanted me to focus on; and it enables me to
 3   keep a very short leash on discovery.  To the extent that I'm
 4   starting to allow discovery on invalidity, I'm going to have
 5   not as good control over a short period of time; or put another
 6   way, I'm going to have to allow more time for discovery.
 7           So we'll go forward on unenforceability, and by that I
 8   mean inequitable conduct.  We're going to stay the antitrust
 9   counterclaims, and we're not going to proceed at this time on
10   invalidity issues, we're not going to proceed on infringement
11   issues.  Parties should get together and draft an order for my
12   signature on that.
13           Now, let's talk timing.  I want to have this in my
14   hands by the beginning of October.  And I've got to leave some
15   period of time for debate as to whether a hearing is needed.
16   That may be obviated by the discovery, but at least I've got to
17   build in that time.
18           Purdue, I don't think you should have any problem with
19   Mallinckrodt's request for production of the depositions and
20   deposition exhibits from the inventors, the attorneys, and the
21   prosecution file.
22           MR. GOLDMAN:  Once we're able to agree on a protective
23   order, I believe that's correct.  My understanding from
24   Mr. Normile is that in the Mallinckrodt case the parties are
25   more or less agreed on the terms of a protective order and can
```
              SOUTHERN DISTRICT REPORTERS, P.C.
                          Page 13

77CVPURC.txt
                        (212) 805-0300
                                                                          28
        77CVPURC                      Conference
     1  finalize that and get that to your Honor for signature.
     2          THE COURT:  You mean "the parties" meaning you and
     3  Mallinckrodt?
     4          MR. GOLDMAN:  Meaning Purdue and Mallinckrodt.
     5          MR. NORMILE:  Mr. Moore and I have negotiated for a
     6  protective order which I believe is ready for submission --
     7          MR. MOORE:  Next week.
     8          MR. NORMILE:  -- early next week, your Honor.
     9          THE COURT:  Obviously I want protective orders in
    10  place, but there shouldn't be any problems.
    11          MR. GOLDMAN:  Right.  In KV and Actavis we had sort of
    12  a three-corner negotiation going on and we're not quite there
    13  yet.  I mean hopefully we can wrap that up in the next week or
    14  so or write to your Honor and explain why we can't.
    15          THE COURT:  Okay.  In the long history of this
    16  litigation, I don't think there's ever been an issue with the
    17  protective order.  Let's focus on that.  This discussion should
    18  probably help you focus on that.  Let's not let it be a
    19  barrier.
    20          Let's get a protective order in place so everybody's
    21  trade secrets and confidential information is protected and
    22  used only in connection with this litigation.
    23          Next item.  I think that's fairly -- I understand the
    24  need for it, I'm just indicating --
    25          MR. GOLDMAN:  We're going to move past that.
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                          29
        77CVPURC                      Conference
     1          THE COURT:  Okay.
     2          MR. GOLDMAN:  Now, in terms of documents, looking at
     3  what was done in, I guess it was, Impax, this litigation has
     4  been going on long enough that at least when it began, a lot of
     5  things weren't kept electronically.  And so we have most, but
     6  not all, of the documents that were put on CDs in connection
     7  with Impax.  And we can certainly make those available within a
     8  couple of days after the entry of a protective order, once we
     9  reach agreement.
    10          So as to the remaining documents, I think it will
    11  probably take us -- and what those are, the remaining documents
    12  are some court filings and things.  They are not the deposition
    13  exhibits and things that people have been talking about.
    14          As to the remaining documents, I'd like to think we
    15  could get those done over the next four weeks.  But certainly
    16  if we can get a protective order done next week, I believe we
    17  can certainly get the electronic copies of things to the
    18  defendants sometime in the week of the 23rd.  We have to
    19  duplicate the CDs, we just have to make sure we have
    20  everything.
    21          There were also some third-party issues involving
    22  approaching Endo and then Boehringer for permission to make
    23  some of those materials available.  And we have to deal with
    24  those.  That was a problem the last time.  I'd like to think --
    25  we've produced some things to Actavis already, and I'm pretty
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                          30
        77CVPURC                      Conference
     1  sure we can move forward expeditiously on them.
     2          THE COURT:  All right.  I think your answer to my
                                Page 14

77CVPURC.txt
```
 3   question is you don't have a problem with it; there are just
 4   some mechanical issues that you need to resolve.
 5              MR. GOLDMAN:  Yes.  My point simply was that we can't
 6   do it tomorrow, but we can certainly do it expeditiously.
 7              THE COURT:  I'll put a finer point on that in just a
 8   moment.  But okay, I understand that.
 9              MR. GOLDMAN:  Thank you.
10              THE COURT:  Now, if we're talking about the beginning
11   of October, for me to have these either in brief form or have
12   the discussion about a hearing, we're not going to have 90 days
13   for discovery.  Really what we're going to have is 60 days of
14   discovery, probably not even that.
15              All right.  Let's have production of all of those
16   documents, of all of this, by August 10th.  If there's any
17   holdup on the protective order, just submit it to me.  We're
18   going to have discovery.  Are there expert reports needed on
19   inequitable conduct issues?  I wouldn't think so.
20              MR. MOORE:  Your Honor, we proposed the schedule, and
21   this schedule is based on the explicit assumption that there
22   will be no place for expert reports.
23              THE COURT:  I don't think that inequitable conduct
24   lends itself to that.  If anybody wants to say otherwise, they
25   can.
```
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    31
       77CVPURC                    Conference
```
 1              MR. MOORE:  I will tell you at the moment, not
 2   knowing what's in the very restricted, and I would point out,
 3   very restricted documents that we're asking for in connection
 4   with inequitable conduct, without knowing that, we don't
 5   contemplate very much additional discovery, I have to be clear
 6   about that.
 7              THE COURT:  All right.
 8              MR. MOORE:  At the moment, I see three depositions.
 9   But again, I'm looking at a black box; so I can't take a firm
10   position on how much we're going to require.
11              THE COURT:  Well, given that, what I'd like to do, and
12   I appreciate your directness, I'd like to cut you down then to
13   45 days, with an ability to come back to me, because if you're
14   talking three depositions, and if you have a good grasp of the
15   Endo file, you're pretty far along, sir.
16              MR. MOORE:  Well, your Honor, I will add only this:
17   Purdue was already listed in one filing in the MDL.  The extent
18   of the depositions -- of most of the individuals I've
19   described, Dr. Kaiko suffered apparently through 11 days of
20   depositions.
21              THE COURT:  Don't forget his time on the stand.
22              MR. MOORE:  We're looking at a lot of transcript that
23   we haven't seen before.  And we can put our best efforts on it,
24   but to get that, which counsel has agreed to produce in, what,
25   a month, to get that, read it --
```
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    32
       77CVPURC                    Conference
```
 1              THE COURT:  What date did I put on it?
 2              MR. MOORE:  It's going to be tough.
 3              MR. NORMILE:  August 10th.
 4              THE COURT:  The 10th.  So it's essentially marked,
 5   that's right.  Well, for example, the Kaiko depositions, you
 6   don't have to wait a month to produce those.  I presume those
 7   are in a dusty box somewhere.
```
                              Page 15

77CVPURC.txt

```
 8              MR. GOLDMAN:  I wasn't planning to wait until the last
 9   day, your Honor.
10              THE COURT:  Okay.
11              MR. GOLDMAN:  I believe we have those in electronic
12   form.  Once we have a protective order, we'll begin to roll
13   those things out.  And we'll work with counsel; if they want to
14   prioritize things, we'll try to work with them to make that
15   happen.
16              THE COURT:  All right.  Let's do it.  Then the last
17   day for fact discovery is September 14.  We'll have a pretrial
18   conference on -- and then essentially, I'm not going to
19   schedule the briefing right now, but essentially we'll exchange
20   briefs over the following two weeks, three weeks, is what we're
21   looking at.
22              So as you do this discovery, you should be thinking
23   about what that briefing is going to look like, and you
24   essentially have briefs that have already been put in on remand
25   in other cases.  So the briefing can be quite short.  I'll
```
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                               33
                77CVPURC            Conference
```
 1   bring you in for a status conference, just to make sure that
 2   everything is moving the pace.  Can we do it on August 23rd or
 3   are people away?  It's the end of August.  Is that doable?
 4              MR. GOLDMAN:  I'll be out of the country that week,
 5   your Honor.
 6              THE COURT:  Do you feel comfortable for somebody else
 7   to appear for a status conference?
 8              MR. GOLDMAN:  Yes.  Thank you.
 9              THE COURT:  I thought that would be the answer.
10   August 23rd at 10 a.m.  And if anybody wants to move that up,
11   meaning earlier, because everybody's away that following week,
12   just let me know.  The idea is just to make sure things are
13   moving appropriately.
14              MR. SWEENEY:  Your Honor, do I understand that at that
15   pretrial conference on August 23, you're going to -- or status
16   conference, you're going to set the briefing schedule?
17              THE COURT:  Yeah.  That's what I'd like to do.  What I
18   want is everybody to come in and tell me discovery went very
19   smoothly; there are no problems; in fact, we're ready to go
20   now.  But if we're not, I'll handle those issues and set a
21   briefing schedule, exactly, so that I could have this in my
22   hands in the beginning of October.  And I want to know what the
23   parties feel about a hearing, and I'll handle that at the
24   August 23rd date, as well.  August 23rd at 10 a.m. just for
25   status for everybody.
```
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                               34
                77CVPURC            Conference
```
 1              Is there anything else I need to handle?
 2              There are two other issues in the Rule 26,
 3   Mr. Goldman.  One had to do with the electronic format; I take
 4   it that's nothing I need to decide now, whether it could be in
 5   need of characters or tip form.  Are you generally handling
 6   that?
 7              MR. GOLDMAN:  Yes, I do.  There's nothing to decide
 8   there.
 9              THE COURT:  And I agree.  There's one other issue,
10   which I forget what it was --
11              MR. GOLDMAN:  It probably had to do with how one
12   counts the parties for purposes of discovery limits.  And for
```
                            Page 16

```
                          77CVPURC.txt
    13   this period, I don't believe that's an issue.
    14          THE COURT:  I think that's right.  All right.  Yes,
    15   sir.
    16          MR. MOORE:  One last question.  Mr. Normile had been
    17   going through a series of discussions on plans with our --
    18          THE COURT:  I'm sorry, a little louder, sir.
    19          MR. MOORE:  I apologize, your Honor.  We've been
    20   having ongoing discussions about Rule 26(f), volunteering
    21   disclosures and so on.  We haven't actually exchanged any paper
    22   yet.  And I don't know what your Honor's inclinations are with
    23   respect to that exercise.  Should we continue with it or stop
    24   it and concentrate on this inequitable conduct issue?
    25          THE COURT:  Sir?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                    35
         77CVPURC                 Conference
     1          MR. NORMILE:  Well, if I understand correctly, we were
     2   talking about wide-open discovery during our Rule 26(f)
     3   discussions, not the narrow focus that your Honor has just
     4   articulated.
     5          MR. MOORE:  That's correct, yeah.
     6          MR. NORMILE:  It would be my understanding we'd stop
     7   that and focus on this.
     8          THE COURT:  All right.  I don't have a problem with
     9   that.  I do think the way to handle it and to take care of the
    10   Federal Circuit's remand is to do inequitable conduct.  And I
    11   think whatever the ruling on that, it will help structure the
    12   remainder of this case -- of these cases and the MDL.
    13          MR. MOORE:  There was one last thing I wanted just to
    14   briefly mention, Judge.  And I have been struggling with the
    15   exact procedural posture we find ourselves in.  None of the
    16   defendants were parties to the Endo trial obviously.
    17          It seems to me that we are all agreed that the Endo
    18   record is going to provide probably the major vehicle,
    19   certainly in terms of volume, for decision in this inequitable
    20   conduct issue.
    21          THE COURT:  Sir, that was greatly mooted throughout
    22   that case.  I would think it's essentially what inequitable
    23   conduct is going to go forward on.  I'm not bowled over by the
    24   articulation of the new allegations of misconduct, but I don't
    25   have any substance yet behind them, so I'll wait for that.  But
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                    36
         77CVPURC                 Conference
     1   I think you're quite right, it's going to be Endo.
     2          MR. MOORE:  While we have been struggling a bit to
     3   characterize exactly where we are.  And just to get our view of
     4   the procedural posture on the table, it appears that where we
     5   are headed is essentially a final adjudication on the issue of
     6   inequitable conduct by agreement of the parties on the basis of
     7   a submission of a written record, in effect, in the Endo, plus
     8   supplementation of the sort that we've discussed today.
     9          THE COURT:  And legal arguments, and presumably oral
    10   presentation of legal argument.
    11          MR. MOORE:  Correct.  It's kind of a trial on a
    12   written record, that's where we are, or the functional
    13   equivalent of it, with a final adjudication with the
    14   inequitable conduct issue all the way at the end.
    15          THE COURT:  I think that's a fair characterization.
    16   Does anyone disagree with that characterization?  I think
    17   that's exactly where we are.  And I think we can do that based
                              Page 17
```

77CVPURC.txt
18  on the fullness of the Endo record.  And if there's something
19  else you come up with in the discovery -- but if you're coming
20  up dry, don't prolong everybody's agony.  We'll move this case
21  forward.
22          MR. MOORE:  Your Honor, if the answers to our
23  questions are in the depositions that are already taken, we'll
24  come and tell you that.
25          THE COURT:  Great.  And then what that will do is it
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    37
77CVPURC                        Conference
1   will give everybody additional time for briefing.  So let
2   everybody know that, then we can build in more time for
3   briefing.
4           All right.  Thank you.  I appreciate everyone's
5   attention.
6                           *     *     *
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

r

                            Page 18